## STATE, ex rel. BENGE v. TRAVELSTEAD, Judge.

No. 72-11618.

Circuit Court, Broward County.

January 2, 1973.

Rex Conrad of Fleming, O'Bryan & Fleming, Fort Lauderdale, for the relator.

Judge Lee C. Travelstead, respondent, in pro. per.

ARTHUR J. FRANZA, Circuit Judge.

*Final judgment:* This cause came on to be heard by a suggestion for writ of prohibition by Eugene J. Benge, relator, v. Lee Travelstead, judge of the municipal court of the town of Lauderdale-by-

the-Sea, respondent, on the 22nd day of December, 1972. On the 19th of December, 1972, the respondent issued a rule to show cause upon relator requiring him to appear before the municipal court to show cause why he should not be adjudged guilty of contempt. Previously, the relator had been ticketed for speeding, pled not guilty, and fined. Subsequently, relator wrote two letters to the Fort Lauderdale News and Sun-Sentinel which are the subject matter of this cause.

Pursuant to Florida Traffic Court Rules 6.08 embodied in 247 So.2d 281, it is apparent that a judge who issues a rule to show cause based on an indirect contempt (committed outside the presence of the court) cannot hear and adjudicate same. The reason is obvious. The judge cannot be the party plaintiff or prosecutor and presiding judge. This alone would be sufficient to quash the lower court's rule.

However, the main issue would be left dangling in indecision and those issues that need deciding ought to be decided. Stating the issue head on as we see it, is — does the publication of the letters sub judice constitute indirect contempt?

The alleged contemptuous language contained in the letters is —

"Learn first-hand how speed traps, fining mills and a court of justice intertwine. It's educational. It's also revolting! . . ."

The corresponding letter, in essence, is the same.

We have here a direct collision between the first amendment guaranteeing a free press and the public's right to a fair and orderly disposition of justice. Are the letters so damning that they constitute a clear and present danger to the orderly administration of justice?

The letters were written and published *after* trial and therefore could not have affected relator's case and the lower court's disposition of same. Justice to all extent had been served. These letters after trial could not alter that justice.

Do they degrade, embarrass or hinder the municipal court in the performance of its duties? Do the words themselves demean? If not the truth; they could not. Can truth, then, be demeaning? It may, but then it ought. If all is false, libel lies.

What was the alleged contempt — the publication — the writing — the saying — the thought?

The lower court says the publication in that relator "caused" the letters to be published.

The relator wrote it — was he in contempt then — assuming he just said it — is that contemptuous? If he only gave thought to it — surely not that. We are free to think — are we free to converse; are we free to write; are we free to publish? There's the rub in this case.

Relator must answer for his actions not because he thought it, said it, wrote it, but because it was *published*. We then come right to it — what is a free press. Is free press only the right to adore and praise? Does it cease to be free when it questions, criticizes and condemns?

The relator stands now in the same posture as the press. Relator opined and press published.

A free press then is a free opinion by a free citizen in a free America. Can a press be free with a people oppressed? Can a people be free with a press oppressed? The answer under our form of government is both *must* be free or neither is. For the free press is the free people and the free people is the free press.

Freedom of the press is the right to extoll or criticize all, the executive, the legislative and the judiciary. What President, what Congress and what Supreme Court has ever been free from criticism.

Just hark back at the last decade, let alone the last century.

Any curtailment of that freedom by whatever power, is the beginning of the end of what we revere and hold so dear — a free America. To say to the government by the governed what we please whenever we please to whomever we please, be they king or commoner. The good of that principle far outweighs the obvious abuses contained therein. But reason and restraint by speech and press eventually prevail.

The right of Americans to free speech is a right to give expression to their thoughts in a free environment unimpaired by the executive, legislative or judiciary tempered only by national security and internal security (for example, inciting a riot); and the orderly administration of justice. Anything that does not meet that test must fall. These are general expressions so each case must face that test and stand on its own.

The press has the duty of restraint in the aforementioned conditions in the exercise of its wisdom; if its exercise is not wisdom then it must answer, but only after, and not before, press (the doctrine of prior restraint).

If a President, a Congress or a Supreme Court can be criticized individually or en masse, surely the base of the judicial mountain

can be subject to a grain of criticism without fear of reprisal to the critic.

In fact, the court should be the champion of a free people to free speech. What better forum has there been or will there ever be to guarantee that right.

A free press in relation to the government and the people should be like as a clear spring, a strong oak, and a warm sun is to nature's freedom.

Free press is nothing more than collective free speech by print, radio or television.

Free press is a direct, unfettered comunication from a small number of people who say or do something through people who report it or transmit it to millions of people who read, hear or see it.

To be any good it must be *by* a free people *for* a free people and *of* a free people.

A circuit judge today has literally the power of life or death — lower courts have other powers — just as complete in their own legal sphere.

A little power of complaint after trial by one sentenced for a traffic offense is not too much power left to the citizen to be considered contemptuous. Not under these facts while indirect.

A free press should question when the people question and express that question through publication. If it were not so then all contra opinion to bureaucracy or government of any branch would be so chilled that the thaw of it would take a millennium and freedom freeze.

We must foster the surging pulse of free press who like the rest of us question but who have the means at hand to question so as to give meaning and effect to that question.

The people expect a free press. The people are entitled to it. The people shall have it.

We can stoically endure the erosion of freedom or like our forbears cherish and nurture it with our every strength. It is apparent that we must fight again and again for that which we fought for over and over and won and rewon. When will history teach us or we learn. Let's leave that which is right alone and use our resources to undo that which is wrong. We've enough to do and not far to look.

The complaint by relator in the instant case published in a local paper as measured by the standards stated above are not contemptuous either by custom, case law, statute or constitution and therefore an absolute writ of prohibition is hereby ordered and respondent shall desist from proceeding pursuant to his rule to show cause against relator.